| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | MEMORANDUM, ORDER,<br>AND JUDGMENT |

| | |
|---|---|
| In re: ZYPREXA PRODUCTS LIABILITY LITIGATION | 04-MD-1596 |
| FREDERICK GREAVES,<br><br>               Plaintiff,<br><br>          – against –<br><br>ELI LILLY & COMPANY,<br><br>               Defendant. | 09-CV-4970 |

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 0 8 2011 ★

BROOKLYN OFFICE

**Appearances:**

For the Plaintiff:

> Frederick Greaves, *pro se*
> Warwick, RI

For the Defendant:

> Adam B. Michaels
> Pepper Hamilton LLP
> New York, NY

> Nina M. Gussack
> Christopher J. Casalenuovo
> Pepper Hamilton LLP
> Philadelphia, PA

**JACK B. WEINSTEIN, Senior United States District Judge:**

## Table of Contents

I.   Introduction ........................................................................................................ 2

1

II.   Facts ...................................................................................................................... 3

  A.   Contents and Use of Zyprexa........................................................................... 3

  B.   Labeling and Warnings to Patients and Medical Professionals ......................... 4

    1.   FDA Labeling and the "Dear Doctor Letter" ............................................. 4

    2.   Consensus Statement of American Diabetes Association and Other Learned Groups .... 6

    3.   FDA March 2007 Letter............................................................................. 8

    4.   Findings on Medical Community's Knowledge of Zyprexa's Risks.............. 9

  C.   Frederick Greaves' Medical History and Treating Physicians' Decision to Prescribe
       Zyprexa.......................................................................................................... 11

III.  Law ...................................................................................................................... 12

  A.   Summary Judgment Standard ......................................................................... 12

  B.   Choice of Law................................................................................................ 13

  C.   Rhode Island Law—Learned Intermediary Doctrine ...................................... 14

IV.   Application of Law to Facts.................................................................................. 16

V.    Conclusion ........................................................................................................... 17

## I.   Introduction

Defendant Eli Lilly & Company ("Lilly") moves for summary judgment against plaintiff

Frederick Greaves.  Plaintiff, then represented by counsel, commenced this action against Lilly

in this court in November 2009.

The present action is essentially a negligence claim, based on a failure to warn.  It seeks

money damages for injuries, alleging that: (1) Zyprexa, a drug produced by Lilly, caused

plaintiff's weight gain and diabetes; (2) Lilly failed to warn of the dangers of Zyprexa; and (3)

Zyprexa would not have been prescribed, and plaintiff's injuries would not have been suffered, if

proper warnings had been given.

For the reasons indicated below, defendant's motion for summary judgment is granted. As indicated in Part III.C, *infra*, this case presents a special problem of application of the learned intermediary doctrine under Rhode Island law, not yet clarified in that state.

## II.   Facts

The present case is part of a massive and highly complex multidistrict litigation that has included claims by individual Zyprexa users, state attorneys general, third-party payors, and other entities alleging physical or financial injury. Some 30,000 cases have been brought against Lilly by individual plaintiffs suffering from serious psychiatric problems who were treated with Zyprexa. Like the present plaintiff, they principally allege that Zyprexa caused deleterious side effects, including excessive weight gain, hyperglycemia, and diabetes; that Lilly misled them and their physicians about the likelihood of these side effects; and that, had they or their attending physicians been aware of the risks, they would not have taken Zyprexa. The court has previously detailed the procedural history and factual background of this multidistrict litigation. *See, e.g., Mississippi v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*, 671 F. Supp. 2d 397 (E.D.N.Y. 2009); *Blume v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*, Nos. 04-MD-1596, 06-CV-2782, 2009 WL 3596982 (E.D.N.Y. Oct. 20, 2009).

### A.   Contents and Use of Zyprexa

Zyprexa's active ingredient is olanzapine, one of a class of medications known as "atypical" or "second generation" antipsychotics. It was approved for use in treating schizophrenia and acute manic episodes associated with bipolar disorder by the United States Food and Drug Administration ("FDA") in 1996. In 2004, the FDA also approved Zyprexa for the treatment of bipolar disorder generally.

3

B.   Labeling and Warnings to Patients and Medical Professionals

1.   FDA Labeling and the "Dear Doctor Letter"

The original 1996 Zyprexa package insert accompanying the drug disclosed information

about possible side effects of administration of olanzapine based on clinical trials.  The insert

provided, in part, the following information:

> Adverse Events Occurring at an Incidence of 1% or More Among
> Olanzapine-Treated Patients in Short-Term, Placebo-Controlled
> Trials - - Table 1 enumerates the incidence, rounded to the nearest
> percent, of treatment-emergent adverse events that occurred during
> acute therapy (up to 6 weeks) of schizophrenia in 1% or more of
> patients treated with olanzapine (doses $\geq$ 2.5 mg/day) where the
> incidence in patients treated with olanzapine was greater than the
> incidence in placebo-treated patients.
>
> The prescriber should be aware that the figures in the tables
> and tabulations cannot be used to predict the incidence of side
> effects in the course of usual medical practice where patient
> characteristics and other factors differ from those that prevailed in
> the clinical trials.   Similarly, the cited frequencies cannot be
> compared with figures obtained from other clinical investigations
> involving different treatments, uses, and investigators.  The cited
> figures, however, do provide the prescribing physician with some
> basis for estimating the relative contribution of drug and nondrug
> factors to the side effect incidence in the population studies.

Zyprexa Package Insert 11 (Oct. 1, 1996) (original emphasis).

Two tables in the insert provided the results of placebo-controlled clinical studies of

olanzapine-treated patients.  The data indicates that, over a six-week administration of Zyprexa,

six percent of olanzapine-treated patients reported weight gain, while only one percent of the

placebo-treated patients reported weight gain. *Id.* at 12-16.

For several years, this information on the insert remained substantially the same insofar

as it provided physicians information on reported weight-gain-related adverse events.  During

4

this period, the results of longer-term studies and clinical experience with Zyprexa and

competing drugs supporting weight gain, hyperglycemia, and diabetes became widely known.

*See* Part II.B.4, *infra*.

In May 2000, the FDA undertook an analysis of the incidence of diabetes and

hyperglycemia in patients using atypical antipsychotics. The director of the FDA's Division of

Neuropharmacological Drug Products requested additional safety information about Zyprexa

from Lilly. In its letter, the FDA cited post-marketing reports of diabetes-related adverse events

associated with Zyprexa use. In response, Lilly provided the FDA with clinical studies, data

analysis, and case report reviews. *See In re Zyprexa Prods. Liab. Litig.*, 253 F.R.D. 69, 119

(E.D.N.Y. 2008). There is disagreement about whether the information given by Lilly to the

FDA was complete and accurate.

On September 11, 2003, the FDA announced it would require a warning about risks of

hyperglycemia and diabetes mellitus and treating precautions to appear in the package insert of

all atypical antipsychotics, including Zyprexa. Designed for prescribing doctors, the label noted

that epidemiological studies and other information indicated that the relationship between the

drug and hyperglycemia and diabetes was not yet fully understood. It reads as follows:

> **WARNINGS**
> **Hyperglycemia and Diabetes Mellitus**
> Hyperglycemia, in some cases extreme and associated with
> ketoacidosis or hypersomolar coma or death has been reported in
> patients treated with atypical antipsychotics including Zyprexa.
> Assessment of the relationship between atypical antipsychotic use
> and glucose abnormalities is complicated by the possibility of an
> increased background risk of diabetes mellitus in patients with
> schizophrenia and the increasing incidence of diabetes mellitus in
> the general population. Given these confounders, the relationship
> between atypical antipsychotic use and hyperglycemia-related

5

adverse events is not completely understood.    However,
epidemiological studies suggest an increased risk of treatment-
emergent hyperglycemia-related adverse events in patients treated
with the atypical antipsychotics studied.  Precise risk estimates for
hyperglycemia-related adverse events in patients treated with
atypical antipsychotics are not available. . . .

Patients with an established diagnosis of diabetes mellitus who are
started on atypical antipsychotics should be monitored regularly
for worsening of glucose control.  Patients with risk factors for
diabetes mellitus (e.g., obesity, family history of diabetes) who are
starting treatment with atypical antipsychotics should undergo
fasting blood glucose testing at the beginning of treatment and
periodically during treatment.  Any patient treated with atypical
antipsychotics    should    be    monitored    for    symptoms    of
hyperglycemia including polydipsia, polyuria, polyphagia, and
weakness.    Patients who develop symptoms of hyperglycemia
during treatment with atypical antipsychotics should undergo
fasting blood glucose testing. . . .

Letter from Russell Katz, M.D., Dep't of Health & Human Servs., to Gregory T. Brophy, Ph.D.,

Eli Lilly & Co., Sept. 11, 2003, at 1-2.  The label did not mention weight gain or diabetes in the

"warning to patients" section.

Lilly added the FDA-required language to the Zyprexa label on September 16,

2003.  *See* Zyprexa Package Insert (Sept. 16, 2003).  At the FDA's request, on March 1, 2004, it

sent a "Dear Doctor" letter to physicians in the United States informing them of the 2003 label

change.  *See In re Zyprexa Prods. Liab. Litig.*, 253 F.R.D. at 134-36.

     2.     Consensus Statement of American Diabetes Association and Other
            Learned Groups

In November 2003, the American Diabetes Association, American Psychiatric

Association, American College of Clinical Endocrinologists, and the North American

Association for the Study of Obesity convened a consensus development conference (the "ADA

consensus conference") on the subject of the association between antipsychotic drugs and

diabetes. An eight-member panel heard presentations from fourteen experts drawn from the

fields of psychiatry, obesity, and diabetes, FDA representatives, and atypical antipsychotic drug

manufacturers. The panel reviewed the relevant peer-reviewed English language scientific

articles.

The ADA consensus conference concluded that Zyprexa and Clozaril posed an increased

risk of diabetes as compared to other atypical antipsychotic drugs. The consensus statement

produced by the conference declared that these relative risks as well as advantages of the drugs

for individual patients in a heterogeneous population "should . . . influence drug choice." In part,

its report concluded:

> There is considerable evidence, particularly in patients with
> schizophrenia, that treatment with [atypical antipsychotics] can
> cause a rapid increase in body weight in the first few months of
> therapy that may not reach a plateau even after 1 year of treatment.
> There is, however, considerable variability in weight gain among
> the various [atypical antipsychotics] . . . .

***

> Clozapine [Clozaril] and olanzapine [Zyprexa] . . . produce the
> greatest weight gain.

***

> Despite limitations in study design, the data consistently show an
> increased risk for diabetes in patients treated with clozapine
> [Clozaril] or olanzapine [Zyprexa] compared with patients not
> receiving treatment with [first generation antipsychotics] or with
> other [atypical antipsychotics]. The risk in patients taking
> risperidone and quetiapine is less clear; some studies show an
> increased risk for diabetes, while others do not. The two most
> recently approved [atypical antipsychotics], aripiprazole and
> ziprasidone, have relatively limited epidemiological data, but

7

available clinical trial experience with these drugs has not shown an increased risk for diabetes.

\*\*\*

[T]he risks of obesity, diabetes, and dyslipidemia have considerable clinical implications in this patient population and should . . . influence drug choice.

Even for those medications associated with an increased risk of metabolic side effects, the benefit to specific patients could outweigh the potential risks. For example, clozapine [Clozaril] has unique benefits for treatment-refractory patients and those at significant risk for suicidal behavior. Since treatment response in many psychiatric conditions is heterogeneous and unpredictable, physicians and patients can benefit from the availability of a broad array of different therapeutic agents.

\*\*\*

These three adverse conditions [obesity, diabetes, and dyslipidemia] are closely linked, and their prevalence appears to differ depending on the [atypical antipsychotic] used. Clozapine [Clozaril] and olanzapine [Zyprexa] are associated with the greatest weight gain and highest occurrence of diabetes and dyslipidemia. Risperidone and quetiapine appear to have intermediate effects. Aripiprazole and ziprasidone are associated with little or no significant weight gain, diabetes, or dyslipidemia, although they have not been used as extensively as other agents.

The choice of [atypical antipsychotic] for a specific patient depends on many factors. The likelihood of developing severe metabolic disease should also be an important consideration.

American Diabetes Association, et al., Consensus Development Conference on Antipsychotic

Drugs and Obesity and Diabetes, 27 Diabetes Care 596, 596-97 (Feb. 2004)

3.    FDA March 2007 Letter

On March 27, 2007, the FDA raised new concerns about the adequacy of Zyprexa's

warning label in a letter to Lilly:

8

> [W]e are concerned that the labeling is deficient with regard to information about weight gain, hyperglycemia, and hyperlipidemia that is associated with olanzapine [Zyprexa] use . . . .
>
> Our overall goal is to improve labeling with regard to these findings so that clinicians will be better informed on what the risks are for their patients. They cannot make reasonable treatment decisions until they have such information. We do not feel that current labeling for . . . Zyprexa provides sufficient information on these risks, and we fully intend to insure that . . . labels are enhanced with the best available information to characterize these risks.

*In re Zyprexa Prods. Liab. Litig.*, 253 F.R.D. at 141 (quoting Letter from Thomas Laughren, FDA, to Robin Pitts Wojcieszek, Eli Lilly & Co., Mar. 27, 2007).

      4.     <u>Findings on Medical Community's Knowledge of Zyprexa's Risks</u>

A universally applicable date from which the statute of limitations is to be considered to run on an individual Zyprexa user's claim has not been determined. Numerous events represent moments at which a patient, health care provider, institution, or the medical community at large arguably discovered that the cause of an alleged injury may have been the administration of Zyprexa. The evidence in this mass litigation, including medical records and the depositions of numerous doctors, suggests that it was widely known and understood in the late 1990s among treating and prescribing physicians that weight gain might follow the administration of Zyprexa. The association between weight gain and heightened risk of diabetes was also broadly recognized by that time.

Formal events bringing this information to the medical profession include the September 2003 Zyprexa label change and contemporaneous press release, the 2003 consensus statement of the American Diabetes Association, and the March 2004 "Dear Doctor" letter distributed nationwide to physicians by Lilly.

In its June 2007 memorandum, order, and judgment on four motions for summary judgment in individual Zyprexa injury cases, this court found that, for purposes of these motions, the March 1, 2004 "Dear Doctor" letter would be considered the latest possible date on which members of the medical community knew or should have known about Zyprexa's obesity- and diabetes-related risks to patient health. *See Souther v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*, 489 F. Supp. 2d 230, 278 (E.D.N.Y. 2007). In *Souther*, applying the relevant "learned intermediary" doctrine, it was determined that the claim of one of the plaintiffs was barred by the statute of limitations:

> Diabetes developed and Zyprexa was prescribed [to plaintiff Cusella] years before the September 2003 label change. *At least from the date of [the] March 2004 Dear Doctor letter, the causal connection between Zyprexa and diabetes was known to Dr. Ganime, Cusella's treating physician.* Since Lilly's duty to warn ran to Dr. [Ganime] rather than Cusella, it became Dr. Ganime's duty from that point onwards to disclose to Cusella that Zyprexa might exacerbate his diabetes, and that it may have been the impetus behind Cusella's insulin-dependancy in the first place.
>
> Dr. Ganime's medical records and deposition testimony . . . show that Cusella was warned numerous times about the link between Zyprexa and diabetes. While the pre-label change warnings Dr. Ganime received from Lilly *may* not have been adequate to absolve Lilly of liability to Cusella, those warnings Cusella received from Dr. Ganime following the label change placed him on notice that use of Zyprexa might have worsened his diabetes and caused him to become insulin-dependent.
>
> *Measured either against the date Cusella developed diabetes—August 1999—or the latest possible date Dr. [Ganime] was aware of the potential causal connection between Zyprexa and diabetes—March 2004—*Pennsylvania's two year statute of limitations had run on Cusella's claim before he filed this suit in April of 2006.

*Id.* (emphases added; citations to record omitted).

10

The March 1, 2004 date represents the "latest possible date" prescribing physicians and, in effect, their patients are deemed aware of the potential causal connection between Zyprexa and diabetes and from which the statute of limitations may run as to any individual plaintiff. Nevertheless, a fact-specific analysis is necessary for each case to determine when the plaintiff – whether independently or by operation of the learned intermediary doctrine – knew of the potential causal connection between Zyprexa and adverse health effects. The facts in many individual cases indicate a much earlier date of discovery for purposes of the statute of limitations. *See, e.g.,* Appendices A-D of *Souther v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*, Nos. 04-MD-1596, 06-CV-1729, Docket Entries Nos. 88-1 to 88-4 (E.D.N.Y. June 11, 2007) (including relevant depositions demonstrating doctors' awareness of Zyprexa's association with patient weight gain).

C.  Frederick Greaves' Medical History and Treating Physicians' Decision to Prescribe Zyprexa

Frederick Greaves, fifty-six years of age, has exhibited symptoms of severe mental illness since his early teens. *See* Def.'s Statement of Undisputed Material Facts ("Def.'s Rule 56.1 Stmt") ¶¶ 1-2. His documented mental health history includes bipolar disorder, schizoaffective disorder, major depression, and anxiety. *Id.* ¶ 3. He has been treated with a variety of medications, and he has been hospitalized multiple times because of his psychiatric problems and because of substance abuse. *Id.* ¶¶ 3-4.

Plaintiff first received Zyprexa in 1998, while undergoing inpatient treatment for drug addiction at the Kent County Mental Health Center in Warwick, Rhode Island. *Id.* ¶ 5. Zyprexa proved helpful for him, and in April 2004, Dr. Richard Whalen, M.D., a psychiatrist at the Kent County Medical Center, took over plaintiff's care and continued him on Zyprexa. *Id.* ¶¶ 6-7.

11

In May 2004, Dr. Whalen discussed the potential side effects of Zyprexa—including weight gain, hyperglycemia, and diabetes—with Mr. Graves, and obtained his informed consent to continue prescribing the medication. Similar meetings were held in February 2005 and March 2006. *Id.* ¶¶ 12-13.

Because of the risk of hyperglycemia, Dr. Whalen monitored plaintiff's blood glucose levels during the course of treatment, and coordinated treatment for plaintiff with plaintiff's primary care physician. He continued to prescribe Zyprexa to Mr. Greaves because he believed the benefits of doing so outweighed the risks. *See id.* ¶ 14.

Dr. Whalen similarly monitored Mr. Greaves' weight during the course of his treatment with Zyprexa; in October 2005, he reduced plaintiff's Zyprexa dosage after Mr. Greaves gained weight. *Id.* ¶ 15.

In the fall of 2006, Mr. Greaves' blood glucose levels were extremely high. Dr. Whalen became concerned that Mr. Greaves might have developed diabetes, and urged him to meet with his primary care physician. He again reduced plaintiff's Zyprexa dosage, but chose not to discontinue him on the medication. *Id.* ¶¶ 16-17.

In November 2006, plaintiff was diagnosed with diabetes. In September 2007, plaintiff's Zyprexa use was discontinued, and he was prescribed Abilify. *Id.* ¶¶ 18-19 & n.21.

## III. Law

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see, e.g., Mitchell v. Washingtonville Cent. Sch. Dist.*, 190

12

F.3d 1, 5 (2d Cir. 1999).  Summary judgment is warranted when after construing the evidence in

the light most favorable to the non-moving party and drawing all reasonable inferences in its

favor, there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56(c); *see Anderson*, 477

U.S. at 247-50, 255.

The burden rests on the moving party to demonstrate the absence of a genuine issue of

material fact.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995);

*see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If the moving party appears to

meet this burden, the opposing party must produce evidence that raises a question of material

fact to defeat the motion.  *See* Fed. R. Civ. P. 56(c).  This evidence may not consist of "mere

conclusory allegations, speculation or conjecture."  *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51

(2d Cir. 1996); *see Del. & Hudson Ry. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990)

("Conclusory allegations will not suffice to create a genuine issue.").

B.     Choice of Law

A multidistrict litigation transferee court applies the choice of law and statute of

limitations rules of the state in which the action was filed.  *Menowitz v. Brown*, 991 F.2d 36, 40

(2d Cir. 1993) (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964)).  Because the instant action

was originally commenced in this court, New York's choice of law principles apply.

Under New York law, the court applies interest analysis to determine which jurisdiction

has the greatest interest in having its law applied to the case.  *Padula v. Lilarn Properties Corp.*,

644 N.E.2d 1001, 1002 (N.Y. 1994).

In this case, plaintiff is a resident of Rhode Island, and all relevant conduct took place in

that state.  Mr. Greaves was prescribed Zyprexa in Rhode Island, all of his known physicians

practice in that state, and he was hospitalized there.  Because Rhode Island is the only state with

a legitimate interest in the resolution of this litigation, the court will apply that state's law to

adjudicate plaintiff's claims.

        C.        Rhode Island Law—Learned Intermediary Doctrine

Plaintiff's complaint rests on the basic allegation that Lilly negligently failed to warn him

about the risks of Zyprexa.

"Essential to the court's analysis on this motion for summary judgment is the 'learned

intermediary' doctrine, which provides that (1) that manufacturers of prescription drugs and

medical devices discharge their duty to of care to patients by providing adequate warnings to

prescribing physicians, and (2) that any failure to warn cannot be considered a proximate cause

of a subsequent injury if the physician was fully aware of the dangers that would have been

included in an alternative warning." *Shepherd v. Eli Lilly & Co. (In re Zyprexa Prods. Liab.*

*Litig.)*, Nos. 04-MD-1596; 10-CV-1757, 2011 WL 2516333, at *4 (E.D.N.Y. June 23, 2011).

The learned intermediary defense is an

> aspect of proportionality that shifts at least some of the burden of
> protecting patients from pharmaceutical manufacturers to treating
> physicians . . . . [T]he learned intermediary rule cannot be viewed
> as an all-or-nothing regulation that absolves the manufacturer,
> shifting the onus entirely to the treating physician, but its force in
> ameliorating liability for damages of the manufacturers cannot be
> ignored.

*Souther*, 489 F. Supp. 2d at 244.  There is a strong trend in prescription drug failure-to-warn

cases to reiterate and apply this well-established doctrine. *See, e.g.*, *Dietz v. Smithkline Beecham*

*Corp.*, 598 F.3d 812, 816 (11th Cir. 2010) (concluding that summary judgment was proper where

the "doctor provided explicit, uncontroverted testimony that, even when provided with the most

14

current research and FDA mandated warnings, he still would have prescribed [the drug] . . . .

Pursuant to Georgia's learned intermediary doctrine, this assertion severs any potential chain of

causation."); *Motus v. Pfizer Inc., (Roerig Div.)*, 358 F.3d 659, 661 (9th Cir. 2004) (holding that

"a product defect claim based on insufficient warnings cannot survive summary judgment if

stronger warnings would not have altered the conduct of the prescribing physician") (citing

*Plummer v. Lederle Labs.*, 819 F.2d 349, 358-59 (2d Cir. 1987)); *Ebel v. Eli Lilly & Co.*, 536 F.

Supp. 2d 767 (S.D. Tex. 2008) (granting summary judgment for defendant upon finding that

prescribing physician was aware of Zyprexa's suicide-related risks that an adequate warning

would have provided and that plaintiff had presented no evidence physician would not have

prescribed Zyprexa had defendant provided him with an alternate warning label), *aff'd*, 321 F.

App'x 350 (5th Cir. 2009) (per curiam); *Allgood v. GlaxoSmithKline PLC*, No. 06-3506, 2008

WL 483574, at *3 (E.D. La. Feb. 20, 2008) (granting summary judgment for defendant because

plaintiff had failed to show (1) that defendant did not adequately warn the physician of a risk

associated with the drug that was not otherwise known to the physician and (2) that the "failure

to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury"),

*aff'd sub nom. Allgood v. SmithKline Beecham Corp.*, 314 F. App'x 701 (5th Cir. 2009) (per

curiam).

The learned intermediary doctrine "has been neither adopted nor rejected in Rhode

Island." *Hogan v. Novartis Pharms. Corp.*, No. 06-CV-0260, 2011 WL 1533467, at *9

(E.D.N.Y. Apr. 24, 2011).  In this situation, the court's duty is to "carefully predict" how the

Rhode Island Supreme Court would resolve the question, giving appropriate weight to

15

pronouncements of the state's highest court and proper regard to relevant rulings of the state's lower courts. *See Runner v. N.Y. Stock Exch.*, 568 F.3d 383, 386 (2d Cir. 2009).

The learned intermediary doctrine has been adopted by "almost every state." Susan Poser, *Unlabeled Drug Samples and the Learned Intermediary: The Case for Drug Company Liability Without Preemption*, 62 Food & Drug L.J. 653, 654 (2007). The court has found nothing in Rhode Island law to suggest that the Rhode Island Supreme Court would not adopt the learned intermediary doctrine if faced with the question of whether to do so. It is highly likely that the Rhode Island Supreme Court will accept the general common and statutory law in this country with respect to a physician's responsibilities to protect his or her patient. *Cf. Hogan*, 2011 WL 1533467, at \*9-10. In any event, given the circumstances of this case, and the notoriety of the Zyprexa litigation in the medical profession, the manufacturer has a right to rely on the physician's carrying out of the duty to warn the patient of clearly perceived dangers.

Application of the learned intermediary doctrine is therefore appropriate in this case.

## IV. Application of Law to Facts

Mr. Greaves was first prescribed Zyprexa in 1998, and he continued to take the medication until September 2007. Dr. Whalen, plaintiff's prescribing psychiatrist, knew that potential side effects of Zyprexa use included weight gain and diabetes, *see* Def.'s Rule 56.1 Stmt ¶ 8, and he testified that, despite the risks of Zyprexa, he believed that his decision to prescribe the medication to plaintiff was the correct one, *id.* ¶ 20. There is no evidence that Dr. Whalen would have altered his prescription decision had the warning that accompanied Zyprexa been different.

16

## V.   Conclusion

Because there is no evidence that plaintiff's doctor would have altered his prescription decision had he been provided additional information, summary judgment against the plaintiff is granted.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date:   November 4, 2011
        Brooklyn, New York

17